REVISED JULY 1, 2002

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 02-40755
_____


JOHNNY JOE MARTINEZ;
GARY ETHERIDGE;
NAPOLEON BEAZLEY

                            Plaintiffs-Appellants

        v.

THE TEXAS COURT OF CRIMINAL APPEALS; SHARON KELLER, PRESIDING
JUDGE; LAWRENCE E. MEYERS, MICHAEL KEASLER, TOM PRICE, BARBARA
HERVEY, PAUL WOMACK, CHARLES HOLCOLM, CHERYL JOHNSON, CATHY
COCHRAN, ASSOCIATE JUDGES, TEXAS COURT OF CRIMINAL APPEALS;

and

JANIE COCKRELL, DIRECTOR, INSTITUTIONAL DIVISION, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,

                            Defendants-Appellees
_____

            Appeal from the United States District Court
               for the Southern District of Texas
_____
                        May 21, 2002
Before KING, Chief Judge, and JONES and STEWART, Circuit Judges.

KING, Chief Judge:

    Plaintiffs-Appellants Johnny Joe Martinez, Gary Etheridge, and

Napoleon Beazley challenge the district court's judgment dismissing,

for lack of jurisdiction, their complaint alleging claims under 42

U.S.C. § 1983.  For the following reasons, we AFFIRM the judgment of

the district court.  Due to the exigencies of time, we construe this

appeal alternatively as an application for permission to file a

successive habeas corpus petition, which we DENY.

Plaintiffs-Appellants Johnny Joe Martinez, Gary Etheridge, and Napoleon Beazley (collectively, "the Plaintiffs") are all prisoners under sentence of death in the State of Texas. Each of the Plaintiffs was convicted of capital murder. Each Plaintiff has directly appealed his conviction, and has collaterally attacked his conviction by filing petitions seeking a writ of habeas corpus in both state and federal court.[1] None of these post-conviction challenges has been successful. Martinez's sentence of death is scheduled to be carried out tomorrow, on May 22, 2002. Etheridge's sentence of death is scheduled to be carried out on June 27, 2002. Beazley's sentence of death is scheduled to be carried out on May 28, 2002.

On May 17, 2002, the Plaintiffs filed the instant 42 U.S.C. § 1983 action in federal district court against Defendants-Appellees the Texas Court of Criminal Appeals, the judges comprising that court, and the Director of the Institutional Division of the Texas Department of Criminal Justice (collectively, "the Defendants"). The essential theory of the complaint is that the Texas Court of Criminal Appeals has violated the Plaintiffs' rights under the Sixth, Eighth,

---

[1] See Martinez v. Johnson, 255 F.3d 229, 231, 234–37 (5th Cir. 2001), cert. denied, 122 S.Ct. 1175 (2002) (outlining the procedural history of Martinez's case and affirming the district court's denial of his petition for federal habeas relief); Beazley v. Johnson, 242 F.3d 248, 253-55, 274 (5th Cir.), cert. denied, 122 S.Ct. 329 (2001) (outlining the procedural history of Beazley's case and affirming the district court's denial of his petition for federal habeas relief); Etheridge v. Johnson, 209 F.3d 718 (5th Cir.) (Unpublished table decision), cert. denied, 531 U.S. 945 (2000) (outlining the procedural history of Etheridge's case and denying his request for a certificate of appealability).

and Fourteenth Amendments by engaging in a policy of "knowingly and intentionally" appointing incompetent lawyers to represent indigent death row inmates in their state habeas proceedings. Specifically, each of the Plaintiffs alleges that he had obvious and potentially meritorious claims of constitutional error (including, inter alia, claims of ineffective assistance of trial counsel and/or prosecutorial misconduct) that were not raised in his petition for state habeas relief due to the incompetence of his appointed state habeas counsel. Each Plaintiff was unsuccessful in his subsequent attempt to secure federal habeas relief, because the federal courts were procedurally barred from considering the constitutional claims omitted from the state habeas petition. See supra note 1. Accordingly, the Plaintiffs were never afforded an opportunity to present these claims to any state or federal court.

The Plaintiffs allege that Texas's "policy" of appointing incompetent state habeas counsel deprived them of their right of meaningful access to the courts, as provided by the Fourteenth Amendment, as well as their Sixth Amendment right to effective assistance of counsel. The Plaintiffs further contend that these procedural inadequacies render their death sentences unreliable, and thus constitutionally suspect under the Eighth Amendment. They seek: (1) a temporary restraining order and preliminary injunction preventing the Defendants from executing them during the pendency of this litigation; (2) a permanent injunction directing the Defendants to appoint competent state habeas counsel in all Texas death penalty cases; and (3) a declaratory ruling from this court that federal courts need not apply the procedural bar of 28 U.S.C. § 2254 to

3

procedural defaults occasioned by incompetence of state habeas counsel if the state does not authorize filing of a successive state habeas application.

The district court dismissed the Plaintiffs' complaint. Relying on this court's suggestion that the "core issue in determining whether a prisoner must pursue habeas corpus relief rather than a civil rights action is . . . whether the prisoner challenges the 'fact or duration' of his confinement or merely challenges the rules, customs, and procedures affecting 'conditions' of confinement," Cook v. Texas Dep't of Criminal Justice Transitional Planning Dep't, 37 F.3d 166, 168 (5th Cir. 1994) (quoting Spina v. Aaron, 821 F.2d 1126, 1128 (5th Cir. 1987)), the district court concluded that the Plaintiffs' 42 U.S.C. § 1983 claims in the instant case were properly construed as requests for writs of habeas corpus under 28 U.S.C. § 2254. The district court determined that dismissal was thus appropriate because, pursuant to 28 U.S.C. § 2254(b)(3)(A), district courts lack jurisdiction to consider second or successive habeas petitions unless this court has granted the petitioners express permission to file such a petition. The Plaintiffs timely appealed the district court's dismissal of their complaint, requesting that this court enjoin state officials from carrying out any executions until the merits of this litigation are resolved and remand this case to the district court for development of the factual record. We review a district court's dismissal of a § 1983 complaint for lack of jurisdiction de novo. See Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998).

The Plaintiffs argue that the district court erred in construing

their § 1983 action as a petition for a writ of habeas corpus. They contend that their § 1983 action cannot be a de facto habeas action because they are not asking the federal courts to set aside their state convictions or sentences, as they would in a habeas action. The Plaintiffs maintain that their only goal in pursuing this action is to obtain "a forum in which to litigate their Sixth, Eighth, and Fourteenth Amendment claims."

The Supreme Court has determined that state prisoners may not obtain equitable relief under § 1983 when the federal habeas corpus statute is the exclusive remedial mechanism for obtaining the requested relief. In Preiser v. Rodriguez, 411 U.S. 475 (1973), the Court considered a § 1983 action brought by state prisoners alleging that state prison officials had unconstitutionally deprived them of good-conduct-time credits. The petitioners sought injunctive relief compelling restoration of the credits, which would entitle them to immediate release from prison. Id. at 476-77. While the Court acknowledged that the petitioners' claims fell within the literal language of § 1983, id. at 488-89, the Court determined that "the specific language of the federal habeas corpus statute, explicitly and historically designed to provide the means for a state prisoner to attack the validity of his confinement, must be understood to be the exclusive remedy available in a situation like this where it so clearly applies." Id. at 489. The Court accordingly held that habeas corpus is the exclusive remedy for state prisoners seeking immediate release or speedier release from prison. Id. at 490. The Court reasoned that to hold otherwise would permit prisoners to circumvent the exhaustion requirement of § 2254(b), thus undermining

the considerations of federal-state comity that underlie this exhaustion requirement.  Id. at 491.

The Court subsequently extended this holding to claims challenging method of execution.  In Gomez v. United States District Court for the Northern District of California, 503 U.S. 653 (1992), the Court considered a § 1983 claim brought by a capital offender alleging that the State of California's method of execution (i.e., lethal gas) was cruel and unusual punishment in violation of the Eighth Amendment.  The Court determined that the § 1983 suit was "an obvious attempt to avoid the application of" the Court's prior holding in McClesky v. Zant, 499 U.S. 467 (1991), barring assertion of claims in subsequent habeas petitions that could have been raised in prior habeas petitions.  Gomez, 503 U.S. at 653.  Thus, the Court implicitly determined that the petitioner's challenge to his method of execution was properly considered a de facto habeas challenge rather than a § 1983 action.[2]

The Court also clarified its Preiser holding in Edwards v. Balisok, 520 U.S. 641 (1997).  In Edwards, an inmate challenged the procedures used by state prison officials in his disciplinary hearing, alleging that these procedures violated his Fourteenth Amendment due process rights.  He requested declaratory relief and monetary damages;  he did not, however, request restoration of his good-time credits.  The Supreme Court found that habeas corpus was the exclusive remedy for this claim because the "principal procedural

_____

[2]     The Court held, in the alternative, that even if the petitioner's claim could properly be considered as a § 1983 action, numerous equitable considerations, including "the State's strong interest in proceeding with its judgment," argued against granting equitable relief.  Gomez, 503 U.S. at 654.

6

defect complained of by the petitioners (i.e., deceit and bias on the part of the decisionmaker) would, if established, necessarily imply the invalidity of the deprivation of his good-time credits," and, thus, necessarily imply a need for immediate or speedier release from prison.  Id. at 648.  However, in considering the petitioner's related due process claim for prospective injunctive relief requiring state prison officials to date-stamp witness statements in disciplinary proceedings, the Edwards Court clearly held open the possibility that a prisoner's complaint challenging the procedures of a disciplinary proceeding could be maintained as a § 1983 action if the relief requested would not necessarily imply the invalidity of his continued detention.  Id.

This court has elaborated on this line of authority on a number of occasions.  For example, in Cook, this court considered a prisoner's § 1983 challenge to a parole board procedure allowing the board to take voided prior convictions into consideration when making parole eligibility determinations.  This court considered whether this claim was cognizable under § 1983, or must instead "be brought after exhausting state remedies, as a habeas corpus claim."  Cook, 37 F.3d at 167.  Acknowledging that "the line between claims which must initially be pressed by writ of habeas corpus and those cognizable under § 1983 is a blurry one," we held that "the core issue in determining whether a prisoner must pursue habeas corpus relief rather than a civil rights action is to determine whether the prisoner challenges the 'fact or duration' of his confinement or merely the rules, customs, and procedures affecting 'conditions' of confinement."  Id. at 168 (quoting Spina, 821 F.2d at 1128).  We

7

found that "a distinction must be made between claims that would merely enhance eligibility for accelerated release and those that would create an entitlement to such relief" and determined that the petitioner's claim could be maintained as a § 1983 action because he did not challenge

"the fact of his conviction or confinement" but instead merely sought future injunctive relief to "avoid what he believes is an unconstitutional procedure by the Board." Id. This decision did not directly question the validity of the petitioner's continued incarceration and could, thus, properly be maintained as a § 1983 action.

Four years later, in Clarke v. Stalder, 154 F.3d 186 (5th Cir. 1998), we clarified our interpretation of the distinction between claims that can be brought as § 1983 actions and claims that must be brought as habeas actions, in light of the Supreme Court's decision in Edwards. In Clarke, we considered a state inmate's constitutional challenge to a Louisiana corrections rule prohibiting inmates from threatening prison employees with legal redress during "confrontation situations." Id. at 188. We held that the inmate was precluded from bringing a facial challenge to the corrections rule in a § 1983 action. While we acknowledged Edwards's suggestion that claims for prospective injunctive relief can appropriately be maintained as § 1983 actions if they do not imply the invalidity of a previous conviction (or of a prisoner's continued detention), id. at 189, we distinguished the request for prospective injunctive relief at issue in Edwards, which "may have only an 'indirect impact' on the validity of a prisoner's conviction," from the type of prospective injunctive

8

relief at issue in <u>Clarke</u>.  <u>Id.</u>  We concluded that the type of prospective injunctive relief at issue in <u>Clarke</u> was "so intertwined with his request for damages and reinstatement of his lost good-time credits that a favorable ruling on the former would 'necessarily imply' the invalidity of his loss of good-time credits."  <u>Id.</u> Because the claims were interrelated in this manner, we found that the legal issues necessary to decide the § 1983 claim would effectively determine the validity of the disciplinary result and the plaintiff's lengthened sentence.  Accordingly, we concluded that the plaintiff's request for declaratory and injunctive relief could not be maintained as a § 1983 action.  <u>Id.</u> at 191.

More recently, in a series of cases exemplified by <u>Moody v. Rodriguez</u>, 164 F.3d 893 (5th Cir. 1999), <u>Faulder v. Johnson</u>, 178 F.3d 741 (5th Cir. 1999), and <u>Beets v. Texas Board of Pardons and Paroles</u>, 205 F.3d 192 (5th Cir. 2000), this court has examined whether habeas corpus is the exclusive remedy for a capital offender seeking a last-minute stay of execution.  In each of these cases, we considered whether a prisoner sentenced to death could bring a § 1983 action challenging the procedural defects in his state clemency proceeding. We determined that federal courts lacked jurisdiction to stay the petitioners' executions pursuant to § 1983, reasoning that "[p]risoner challenges to the result of a single allegedly defective clemency proceeding must be pursued by writ of habeas corpus, not by suits under 1983."  <u>Moody</u>, 164 F.3d at 893 (citing <u>Preiser</u>, 411 U.S. 475); <u>accord</u> <u>Faulder</u>, 178 F.3d at 742; <u>Beets</u>, 205 F.3d at 193; <u>see also</u> <u>Gilreath v. State Bd. of Pardons and Paroles</u>, 273 F.3d 932, 933 (11th Cir. 2001) (concluding that a petitioner's due process

9

challenge to the state's consideration of his clemency application was a de facto petition for habeas relief).  Although none of these cases significantly elaborates the rationale underlying this determination, Moody's reliance on Preiser indicates our implicit conclusion that a request for a stay of execution entails a potential federal interference with state penal interests that is equivalent to, if not greater than, the request for immediate release (or speedier release) from prison that was at issue in Preiser.  Accordingly, § 1983 challenges to an impending execution (like § 1983 challenges to a state's method of execution or § 1983 challenges seeking immediate or speedier release from prison) must be brought as habeas actions.

We now apply this line of authority to the facts of the instant case.  As the above-referenced cases make clear, in determining whether an action is properly considered as a de facto habeas action or a § 1983 action, we look at the kind of relief the petitioner seeks from the federal courts.  See, e.g., Moody, 164 F.3d at 893; accord Gilreath, 273 F.3d at 933.  The first kind of relief the petitioner sought from the district court was a "temporary restraining order and preliminary injunction preventing defendants and all persons acting under their authority, direction, or control, or acting in privity or with identity of interest, from carrying out the execution of the Plaintiffs until this litigation has run its course."  As the district court correctly recognized, this request is the functional equivalent of a request for a stay of execution.  It is well-established under Moody and its progeny that a petition for a writ of habeas corpus is the exclusive remedy for a petitioner

10

seeking stay of execution. Construing the Plaintiffs' requests for stays of execution as habeas claims, the district court properly determined that it was without jurisdiction to consider these claims in the absence of express authorization by this court pursuant to 28 U.S.C. § 2244(b)(3)(A).

The Plaintiffs also requested from the district court (1) a permanent injunction directing the Defendants to appoint competent state habeas counsel in all Texas death penalty cases; and (2) a declaratory ruling from this court that federal courts need not apply the procedural bar of 28 U.S.C. § 2254 to procedural defaults occasioned by incompetence of state habeas counsel if the state does not authorize filing of a successive state habeas application. These requests form the basis of the Plaintiffs' contention that Preiser is inapplicable to their § 1983 claims because they ultimately seek only a "forum" in which to present their constitutional claims, rather than a reversal of their convictions or sentences. However, we find, pursuant to our decision in Clarke v. Stalder, that these requests for declaratory and injunctive relief are "so intertwined" with the Plaintiffs' request for injunctive relief from their impending executions that a favorable ruling on the Plaintiffs' challenges to Texas's system for appointing state habeas counsel is likely to effectively determine the validity of their death sentences. Accordingly, these claims for declaratory and injunctive relief are not cognizable in a § 1983 action. See Clarke, 154 F.3d at 191.

In the alternative, even if the Plaintiffs' requests for declaratory and injunctive relief imposing systemic reform of Texas's

11

habeas corpus procedures could properly be addressed as § 1983 claims under Cook, the requested relief is foreclosed by this court's precedents. As the Defendants correctly point out, both this court and the Supreme Court have already determined on numerous occasions that there is no constitutional right to state habeas corpus counsel. See, e.g., Pennsylvania v. Finley, 481 U.S. 551, 554 (1987); Jones v. Johnson, 171 F.3d 270, 277 (5th Cir. 1999). Accordingly, the alleged ineffectiveness of state habeas counsel cannot constitute cause sufficient to avoid application of a procedural bar on federal habeas review to claims defaulted in state court. Jones, 171 F.3d at 277. In their second and third claims for relief, the Plaintiffs effectively ask the district court to reverse longstanding Supreme Court precedent and to rewrite the federal habeas statute. The district court properly declined this invitation.

Because we conclude (in accordance with the holding of the district court) that the Plaintiffs' claims should have been brought as a habeas corpus action, in the interests of judicial economy (and due to the time constraints at issue in this challenge to impending executions), we construe the Plaintiffs' appeal of the district court's judgment alternatively as an application for permission to file a successive habeas corpus petition. See, e.g., Cooper v. Calderon, 274 F.3d 1270, 1275 (9th Cir. 2001) (construing a petitioner's request for a certificate of appealability as a request for authorization to file a second or successive habeas petition); Allen v. Massie, 236 F.3d 1243, 1245-46 (10th Cir. 2001) (construing a petitioner's request, made on the eve of her execution, to recall the mandate in her federal habeas action as an application to file a

12

second or successive habeas petition).  We find that the claims alleged in the Plaintiffs' complaint do not meet the standard established in 28 U.S.C. § 2244(b).  Even if we assume, arguendo, that the Plaintiffs' challenges to Texas's "policy" of appointing ineffective state habeas counsel can be conceptually distinguished from their challenges to the ineffectiveness of their own state habeas counsel asserted in their first habeas corpus proceedings, these claims neither "rel[y] on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court," id. § 2244(b)(2)(A), nor rely on newly-discovered facts that "would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found" the Plaintiffs guilty of their underlying offenses, id. § 2244(b)(2)(B).  Accordingly, the Plaintiffs' request for permission to file a successive habeas petition is denied.

For the foregoing reasons, the judgment of the district court is AFFIRMED, and the Plaintiffs' request to this court for injunctive relief is DENIED.  The Plaintiffs' alternative request for permission to file a successive petition for a writ of habeas corpus is DENIED.

13